# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| BRIAN HAYHURST, individually on behalf of all others similarly situated, | NO. |
| Plaintiffs, | **CLASS ACTION COMPLAINT** |
| v. | **JURY DEMAND** |
| KELLER WILLIAMS REALTY, INC., a Texas corporation, | |
| Defendant. | |

**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff Brian Hayhurst ("Plaintiff Hayhurst" or "Hayhurst") brings this Class Action Complaint and Demand for Jury Trial against Defendant Keller Williams Realty, Inc. ("Defendant" or "Keller Williams") to stop Keller Williams from directing its realtors to violate and/or ratifying its realtors' violations of the Telephone Consumer Protection Act by making unsolicited, prerecorded and autodialed calls to consumers *without their consent*, including calls to consumers registered on the National Do Not Call registry, and to otherwise obtain injunctive and monetary relief for all persons injured by Keller Williams' conduct. Plaintiff Hayhurst for this Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

## INTRODUCTION

1. Keller Williams is one of the largest real estate franchises in the world.

2. Keller Williams differentiates itself from other real estate franchises through its training and coaching programs, through which Keller Williams directs the activities of its realtors, including their marketing efforts. In fact, "Gary Keller has often said that Keller

Williams is 'a training and coaching company that also happens to be in the business of real estate.'"[1]

3.      As a result, in 2015, Training Magazine recognized Keller Williams "as the world's #1 training organization across all industries."[2]  And, both before and since then, Keller Williams has consistently placed in the Top 5 on the Training 125, which ranks companies' excellence in employer-sponsored training and development programs.[3]

4.      Relevant here, for the last several years, a key component of Keller Williams' marketing plan for realtors instilled through its award winning training and coaching programs has been for realtors to purchase lists of potential leads for real estate listings from lead provider companies such as Landvoice Data LLC ("Landvoice") or RedX, companies that generate personal phone numbers associated with expired listings on the multiple listing service ("MLS), including phone numbers registered on the National Do Not Call Registry, and which provides a web-hosted autodialer for realtors to make marketing calls *en masse* to those numbers without the recipients' consent.

5.      In Plaintiff Hayhurst's case, Keller Williams' marketing plan resulted in at least 3 unsolicited, autodialed and pre-recorded calls by or on behalf of Keller Williams to Plaintiff's personal cellular phone that is registered on the DNC as a result of his property listing expiring on the MLS.  Plaintiff Hayhurst did not give any prior express consent to receive these calls from Defendant Keller Williams.

6.      In response to these calls, Plaintiff Hayhurst files this lawsuit seeking injunctive relief, requiring Defendant to cease directing its realtors to violate and/or ratifying its realtors' violations of the Telephone Consumer Protection Act by placing unsolicited calls to consumers' cellular telephone numbers using prerecorded messages and an automatic telephone

---

[1] From the Keller Williams Education website, available at, http://www.kw.com/kw/education.html (last accessed March 28, 2018).
[2] KW Maps Coaching, available at, http://mapscoaching.kw.com/coaches/dianna-kokoszka.
[3] https://blog.kw.com/keller-williams-named-top-training-organization-worldwide

dialing system and otherwise calling telephone numbers registered on the DNC, as well as an award of statutory damages to the members of the Classes and costs.

## PARTIES

7.      Plaintiff Brian Hayhurst is a resident of Winston-Salem, North Carolina.

8.      Defendant Keller Williams is a Texas corporation headquartered at 1221 South Mopac Expressway Suite 400, Austin, Texas 78746.  Defendant conducts business throughout this District, North Carolina, and the United States.


## JURISDICTION AND VENUE

9.      This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA").

10.     This Court has personal jurisdiction over Defendant and venue is proper in this District under 28 U.S.C. § 1391(b) because Defendant does significant business in this District and the state of North Carolina and because the wrongful conduct giving rise to this case was directed from and/or occurred in this District.

## COMMON ALLEGATIONS

**Keller Williams Directs and/or Ratifies Their Realtors' Purchases of Lists of Leads from Lead Providers and Calls to Them Without Consent**

11.     Keller Williams' marketing plan directs realtors to use certain prescribed practices to market Keller Williams' realty services, including unsolicited, prerecorded and autodialed calls to cellular telephone numbers and other telephone numbers registered on the DNC.  Keller Williams impresses its marketing plan on its network of realtors through its coaching and training programs, during national events like the Keller Williams Mega Camp and Keller Williams Family Reunion, and through courses and materials offered by Keller Williams University and KW MAPS (Keller Williams Mega Achievement Productivity Systems).

**Keller Williams Recommends Calling Expired Listings as Part of Their Marketing Plan**

12.     Keller Williams encourages realtors to call property owners generated from expired listings on the MLS.

13.     In fact, Keller Williams promotes an "Expired Script" to Keller Williams realtors that it encourages its realtors to use to market to consumers who have expired listings.[4]

14.     Keller Williams also provides training videos to all of its realtors through KWconnect.com, some of those videos teach agents how to call expired listings.

15.     For example, in the video on KWConnect.com "Does Cold Calling Expired Listings Even Work? (The Truth), the Keller Williams trainer in the video states that "they [the consumer] get mad after the 3rd or 4th call before 8:30am."[5] He goes on to imitate a consumer stating "You're the 16th caller this morning. You are not up against those 16 other people, you may only be up against 2 or 3 because the 2 or 3 know how to respond to that and…get the appointment…and get the listing."[6]

16.     In addition, Defendant provides a video to their realtors on KWConnect.com called "LIVE Cold Call (+Expired Listing Appointment Set)"[7] where the trainer demonstrates how he calls consumers with expired listings and he shows how he tries to convince the consumer to meet with him even though the consumer on that call informed the agent that she already has an agent for the property.[8]  The trainer of that video also mentioned in the video that "I've talked to a lot of wrong numbers depending on our lead source, that will happen."

17.     In another video available to all Keller Williams realtors on KWConnect titled "Expired Listing Lead Generation & Prospecting" by Dustin Nulf[9] the trainer shows the

---

[4] https://www.theredx.com/blog/10-golden-expired-scripts-to-list-more-properties/
[5] https://www.kwconnect.com/search?q=expired+script
[6] Id.

[7] https://www.youtube.com/watch?v=n0_9sYpNKYo
[8] https://www.kwconnect.com/search?q=expired+script
[9] https://www.kwconnect.com/search?q=expired+script and https://www.youtube.com/watch?v=Fw9cBSJoWDw

structure of his expired listings marketing. He details how one of his administrators will look for expired listings on the MLS, look up the owner information for that property, he uses a service called MOJO "to pull expired and For Sale by Owner data from the Internet everyday and that data is loaded into our CRM and our agents can then call those expired listings." He goes on to say "The key is to be consistent…we've doing this stuff for 8 or 9 years now and that's how you build a consistent pipeline of listings."

18. In addition, they have a video uploaded by Keller Williams University KWU entitled "FSBO's and Expired Listings – Newscast" and also have a video by Amber Yturralde entitled "FSBO and Expired Listings Extreme Training Camp with Kevin Ward."[10] [11] They have another video entitled "Real Estate Training / Scripts for FSBO and Expired Listings / Real Estate Training" with Arthur Mariroso training a class of Keller Williams agents on that topic.[12]

19. On KWConnect they have another video called "Expired Listings 101 with Rachel Adams Lee" who educates the viewer how to talk to an expired listing on the phone to make a listing appointment.[13]

20. On another video provided on KWConnect called "Expired Listings: Go Pro" Paul Campanaro a professional real estate trainer teaches Keller Williams agents how to make Expired Listing calls.[14]

21. Keller Williams also maintains an Approved Vendor program that includes Approved Vendors who mine consumer data from expired MLS listings so that agents can call them to solicit them to be their real estate agent. Keller Williams gives Approved Vendors its "trusted" seal of approval with corresponding "[a]ccess to more than 150,000 Keller Williams

---

[10] https://www.kwconnect.com/search?q=%22expired+listings%22
[11] https://www.youtube.com/watch?v=h1AS9REDg7Q
[12] https://www.kwconnect.com/search?q=%22expired+listings%22
[13] https://www.kwconnect.com/search?q=%22expired+listings%22 and
https://www.youtube.com/watch?v=E3kFVdHzxKc
[14] https://www.youtube.com/watch?v=Xt9I3RmCBks and
https://www.kwconnect.com/search?q=%22expired+listings%22

5

associates and more than 750 franchises throughout the United States and Canada."[15]   One of Keller Williams' primary approved vendors is Landvoice, a company like RedX that sells agents lists of real estate leads, researches telephone numbers associated with the leads, and provides agents with an online automatic telephone dialing system which allows them to load the lists of leads using a sequential number generator and then dial them.

### Keller Williams Promotes RedX to Its Agents to Generate Expired Listing Leads

22.     RedX is a service that provides among other things, leads to real estate agents of personal phone numbers of property owners whose property listing on the MLS expired. RedX does this by using skip tracing technology to lookup property listings from the MLS, locate the property owners of those listings, and generate personal phone numbers of those property owners who they sell to real estate agents along with access to a dialer to call those agents, many of which are registered on the Do Not Call registry.

23.     Defendant Keller Williams ratifies this conduct of using services like RedX to call phone numbers of property owners of expired listings.

24.     For example, on Keller Williams' own blog they acknowledge realtors' use of RedX:

> **Expired Prospecting**
>
> "When it came time to dial for expired dollars, the team got creative, looking up everyone who expired between the years of 2007 and 2011. The list returned 100,000 homes, which begged the next question: how do you crank through that many phone calls in just 90 days? Ultimately, they decided to leverage Red X and MOJO Powerdialer,purchased BOOM headphones, and added more phone lines and the ability to screen incoming calls."[16]

---

[15] See Keller Williams Approved Vendors page, http://www.kw.com/kw/vendor-network.html, and see also the YouTube Video at the bottom in which KW agents talk about the trust they have when vendors are considered Approved Vendors (last accessed March 28, 2018).
[16] https://blog.kw.com/2013/10/25/craig-reger-90-listings-in-90-days-method-will-transform-your-business/

6

25.    In Keller Williams' magazine "Outfront" – the editorial arm of Keller Williams which is "committed to bringing you an in-depth look at the business, lives and success strategies of our top agents from around the world," several articles in the magazine credit RedX to Keller Williams realtors' success. "With so many outbound calls made daily, they use RedX and Mojo to power-dial and auto-dial so that they can decrease their downtime and increase their productivity." [17]

26.    RedX, a similar service as Landvoice, was the company that provided one of the Keller Williams realtors the phone number used to call Plaintiff in this case.

### Keller Williams and Lead Services Like Landvoice

27.    Landvoice's leads are in the first instance aggregated from expired listings, for-sale-by-owner properties, old expired leads, and pre-foreclosure leads.  Landvoice then uses state-of-the-art technology to "take additional steps to deliver the highest quality and quantity of owner contact information including cell phone numbers."[18]  Landvoice generates multiple phone numbers (including cell phone numbers and other numbers listed on the DNC) for each lead to ensure that the agent calling has the best chance of reaching the client.[19]  (This type of lead gathering information has been commonly used by debt collectors for instance who use skip-tracing to track every possible contact related to a particular individual.)

28.    Landvoice's service includes the automatic loading of the Landvoice-generated leads lists, using a sequential number generator, into a "Power Dialer," an automatic telephone

---

[17] https://issuu.com/kellerwilliamsrealtyinc/docs/kw_outfront_11.3.2014_webres

[18] https://www.linkedin.com/company/landvoice/

[19] Landvoice is owned by Domega, Inc., "the world leader of data aggregation and lead generation [which uses] hi-tech creative systems to give clients hard-to-get data and leads."  *See* https://www.linkedin.com/company/domega-inc-/

dialing system that "dial[s] leads" at a rate of 80 to 300 per hour and delivers a pre-recorded message if calls are not answered:[20] [21]

****



---

[20] Advertisement available at, https://landvoice.com/power-dialer/.
[21] Landvoice's lists of leads are also intended by Landvoice to be easily integrated and loaded to any autodialer, not just the one provided as part of Landvoice's service. *See* blog available at, http://activerain.com/blogsview/1170875/mojo-and-landvoice--we-play-well-together---.

29.     The problem with this whole system is that Landvoice is providing multiple phone numbers (including cell phone numbers and numbers listed on the DNC) along with access to an autodialer system to agents, and neither Landvoice nor the agents have consent to call these consumers' phone numbers using an autodialer in clear violation of the TCPA. In fact, Landvoice has expressly acknowledged in response to an Atlanta Keller Williams' agent's complaints, that the leads it generates include numbers on the DNC and that, as part of its autodialer, it does not provide users a mechanism to filter out numbers on the DNC:[22, 23] ‹



---

[22] Tweet at, https://twitter.com/amandakayleign, and reply at, https://twitter.com/Landvoice/status/948623975852138496; *see also* http://www.kw.com/kw/agent/amanda-kay.

[23] Consumers' complaints to Landvoice regarding calls to numbers on the DNC are available at, https://www.bbb.org/utah/business-reviews/sales-lead-generation/landvoice-data-llc-in-orem-ut-22168844/reviews-and-complaints?section=complaints.

30.     Notwithstanding, Keller Williams directs its franchisees and their agents to use the Landvoice system, which by definition knowingly promotes their violating the TCPA.[24]

31.     For example, Keller Williams includes Landvoice as a regular participant in its annual Mega Camp training program.[25]   And, as part of Mega Camp, Keller Williams "team[s] with" Landvoice to promote widespread access to Landvoice's leads and autodialer system:[26]



32.     Similarly, Landvoice is a regular participant and presenter regarding its lead generating and autodialing services at Keller Williams Family Reunion, a yearly event with

---

[24] In fact, Keller Williams posted a YouTube video inaccurately advising agents that they may call numbers that are on the DNC, explaining: "*If for sale by owner and on the DNC, you may call them anyway.*" Video available at, https://www.youtube.com/watch?v=UVBfyPfDDjQ

[25] See video of Landvoice at Megacamp at, https://www.youtube.com/watch?v=ICHXd07b8tc (last accessed March 28, 2016).

[26] The deal is available at, https://www.landvoicedata.com/kw/ (last accessed March 28, 2016).

over 10,000 attendees, which features Keller Williams executives and master faculty leading educational sessions covering sales skills, leadership skills, and technology training.[27, 28, 29, 30]

33.     In addition to endorsing Landvoice's presentation at Family Reunion, Keller Williams' own trainers from Keller Williams University – which "provides an industry-leading curriculum addressing every aspect of success in real estate"[31] – direct Keller Williams agents at Family Reunion, and as part of other Keller Williams University training programs, to purchase lead lists and call them using an autodialer:



34.     Other Keller Williams programs and materials similarly direct franchisees to use an autodialer to call leads.  For example, Keller Williams' training manual for agents called Three L Blueprints, which Landvoice publishes on its website, makes clear to  agents that using an autodialer is required to become the "highest-performing associate[]."[32]

[27] https://trainingmag.com/trgmag-article/keller-williams-home-no-1
[28] Instagram post with the caption "…#Landvoice at #KWFR2018" [KWFR is Keller Williams Family Reunion] available at, https://www.instagram.com/p/BfcEDa9HwWD/, and photo of the Landvoice table available at, https://i.pinimg.com/736x/e6/85/6f/e6856f4daa3bd8984a089588fdf381b7--family-reunions-orlando-florida.jpg.
[29] https://trainingmag.com/trgmag-article/keller-williams-home-no-1
[30] Instagram post with the caption "…#Landvoice at #KWFR2018" [KWFR is Keller Williams Family Reunion] available at, https://www.instagram.com/p/BfcEDa9HwWD/, and photo of the Landvoice table available at, https://i.pinimg.com/736x/e6/85/6f/e6856f4daa3bd8984a089588fdf381b7--family-reunions-orlando-florida.jpg.
[31] As stated on the KW Education webpage, http://www.kw.com/kw/education.html.
[32] Full training manual available here, https://landvoice.com/wp-content/uploads/2017/05/KW_Three_L_Blueprints.pdf.

35.     In fact, Keller Williams' marketing plan for franchisees – involving purchasing lists of leads and autodialing them – is reinforced at the highest levels of Keller Williams' organization.  Dianna Kokoszka, CEO of KW MAPS Coaching at Keller Williams, who co-teaches training classes with Keller Williams founder Gary Keller, developed an entire training program called BOLD (Business Objective: A Life by Design) centered around obtaining Landvoice generated leads and autodialing them, which Keller Williams claims "has helped **tens of thousands**" of its agents.  In fact, Keller Williams agents who sign up for BOLD are given a free trial account with Landvoice:[33]



36.     Keller Williams coaching and training programs and materials are an integral part of the Keller Williams franchise system, and are the means by which Keller Williams controls the manner in which franchisees market for new listings – i.e., buying lists of leads and autodialing the associated telephone numbers without consent and, as a result of known

---

[33] https://landvoice.com/bold/welcome/

deficiencies in Landvoice's products, oftentimes notwithstanding their being registered on the DNC.

37.     RedX is a competitor service of Landvoice which provides the phone numbers of leads whose properties have expired on the MLS.

38.     The problem with services like Landvoice and RedX are that by their nature agents are calling consumers who did not ask to be called and when multiple realtors subscribe to these services, property owners are bombarded with multiple calls from real estate agents soliciting them to relist their property with them.

39.     Consumers are fed up with the harassment of receiving these calls that they did not consent to.

40.     Not surprisingly, companies that sell leads acknowledge consumers' desire not to receive such calls.  RedX for instance, has a video entitled "Expired Listing Objection Handlers: You're the 73rd Agent to Call Me" which trains the agents who use their service how to handle angry property owners who are being bombarded with expired listing solicitation calls.[34]

RedX has produced another video entitled "How to Deal with Bad Phone Numbers When Prospecting" which basically admits that some of the phone numbers they generate for property owners of expired listings is not accurate which leads to real estate agents bombarding consumers who do not have even an expired property listing and how to deal with those consumers.[35]

## PLAINTIFF HAYHURST'S ALLEGATIONS

---

[34] https://www.youtube.com/watch?v=bhYi-1EapIE

[35] https://www.youtube.com/watch?v=EzNMnjnMcTo

**Keller Williams Directed and/or Ratified their Realtors' Repeated Calls to Plaintiff Hayhurst's Cell Phone Number Without His Consent, Despite It Being Listed on the DNC**

41.     Plaintiff has had his cellular telephone number registered on the Do Not Call registry since July 22, 2003 to avoid unsolicited telemarketing calls. Plaintiff's number is not associated with a business.

42.     Plaintiff hired a Re/Max real estate agent to list his property on the multiple listing service (MLS). The property listing expired on the MLS on May 31, 2019.

43.     The MLS listing, listed the property address and identified Plaintiff's realtor's phone number. The property listing did not include Plaintiff's personal cell phone number.

44.     Shortly after the MLS property listing expired, Plaintiff started receiving solicitation calls to his cell phone from Keller Williams agents for the purpose of soliciting him to relist his property with their company.

45.     On Saturday June 1, 2019 Plaintiff was called on his cell phone by a Keller Williams agent from the phone number 336-609-6016.  Plaintiff heard the phone ring but let it go to voicemail.

46.     The Keller Williams agent left a pre-recorded voicemail on Plaintiff's cell phone.  When the Plaintiff listened to the voicemail, the message stated

> "Hi, this is Karmel from Keller Williams realty, I saw that your house is not listed on the MLS anymore, I was wondering when you are ready to interview real estate agents to get your house sold. Please give me a call at 336-609-6016 I would greatly love the opportunity to talk to you."

47.     Plaintiff received another call on June 4, 2019 at 8:56 A.M. This time the Plaintiff answered the call.

48.     When Plaintiff answered the call, he answered and said hello several times but there was no one on the line. Finally, he heard a live person get on the call. Plaintiff believes he was called by an autodialer since it appeared that there was no one on the line until after Plaintiff said hello several times and only afterwards heard someone come onto the line.

14

49.     The person who answered identified herself as Karmel from Keller Williams who solicited the Plaintiff to relist his property with her.

50.     Plaintiff received a third call on June 5, 2019 from the phone number 336-592-7546.

51.     Plaintiff answered this call and heard several seconds of dead air before a live operator came on the line.

52.     The operator identified herself as calling for Keller Williams agent Gary Hernandez. She informed the Plaintiff that she is located in Vazuio City, Philippines.

53.     Plaintiff asked her how she got his phone number. She said that she got his phone number from the RedX system they are using.

## CLASS ALLEGATIONS
**Class Treatment Is Appropriate for Plaintiff's' TCPA Claims**

**54.**     Plaintiff Hayhurst brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) and seek certification of the following three Classes:

**Prerecorded No Consent Class:** All persons in the United States who from four years prior to the filing of this action (1) Defendant (or a realtor acting on behalf of Defendant) called (2) using a prerecorded voice message, and (3) for whom Defendant claims (a) they obtained prior express written consent in the same manner as Defendant claims they supposedly obtained prior express written consent to call Plaintiffs, or (b) they did not obtain prior express written consent.

**Autodialed No Consent Class:** All persons in the United States who from four years prior to the filing of this action (1) Defendant (or a realtor acting on behalf of Defendant) called, (2) on the person's cellular telephone, (3) using similar equipment as used to call Plaintiff, and (4) for whom Defendant claims (a) they obtained prior express written consent in the same manner as Defendant claims they supposedly obtained prior express written consent to call Plaintiffs, or (b) they did not obtain prior express written consent.

**Do Not Call Registry Class:** All persons in the United States who from four years prior to the filing of this action (1) Defendant (or a realtor acting on behalf of Defendant) called more than one time; (2) within any 12-month period (3) where the person's

telephone number had been listed on the National Do Not Call Registry for at least thirty days; (4) for the purpose of selling Defendant's products and services; and (5) for whom Defendant claims (a) they obtained prior express written consent in the same manner as Defendant claims they supposedly obtained prior express written consent to call Plaintiffs, or (b) they did not obtain prior express written consent.

55.     The following individuals are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, its subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiffs' attorneys; (4) persons who properly execute and file a timely request for exclusion from the Classes; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against Defendant have been fully and finally adjudicated and/or released. Plaintiff Hayhurst anticipates the need to amend the Class definitions following appropriate discovery.

56.     **Numerosity**: On information and belief, there are hundreds, if not thousands of members of the Classes such that joinder of all members is impracticable.

57.     **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff Hayhurst and the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to the following:

(a)     whether Defendant's conduct constitutes a violation of the TCPA;

(b)     whether Defendant utilized an automatic telephone dialing system to make its calls to Plaintiff Hayhurst and the members of the Autodialed No Consent Classes;

(c)     whether Defendant systematically made multiple telephone calls to Plaintiff Hayhurst and members of the Do Not Call Registry Class whose telephone numbers were registered with the National Do Not Call Registry;

16

(d)     whether Defendant placed prerecorded calls to Plaintiff and the members of the Pre-Recorded No Consent Class  using a pre-recorded message

(e)     whether Defendant made autodialed and pre-recorded telephone calls to Plaintiff Hayhurst and the Classes without first obtaining prior express written consent to make the calls; and

(g)     whether members of the Classes are entitled to treble damages based on the willfulness of Defendant's conduct.

58.     **Adequate Representation**: Plaintiff Hayhurst will fairly and adequately represent and protect the interests of the Classes, and has retained counsel competent and experienced in class actions. Plaintiff Hayhurst has no interests antagonistic to those of the Classes, and Defendant has no defenses unique to Plaintiff. Plaintiff Hayhurst and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes, and have the financial resources to do so. Neither Plaintiff Hayhurst or his counsel have any interest adverse to the Classes.

59.     **Appropriateness**: This class action is also appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Classes and as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes and making final class-wide injunctive relief appropriate. Defendant's business practices apply to and affect the members of the Classes uniformly, and Plaintiffs' challenge of those practices hinges on Defendant's conduct with respect to the Classes as wholes, not on facts or law applicable only to either Plaintiff. Additionally, the damages suffered by individual members of the Classes will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the members of the Classes to obtain effective relief from Defendant's misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and

comprehensive supervision by a single court. Economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured.

### FIRST CLAIM FOR RELIEF
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Hayhurst and the Prerecorded No Consent Class)**

60.     Plaintiff Hayhurst repeats and realleges paragraphs 1 through 59 of this Complaint and incorporates them by reference.

61.     Defendant and/or its agents transmitted solicitation telephone calls to Plaintiff Hayhurst and the other members of the Prerecorded No Consent Class using a prerecorded voice message.

62.     These prerecorded voice calls were made *en masse* without the prior express written consent of Plaintiff Hayhurst and the other members of the Prerecorded No Consent Class.

63.     Defendant has, therefore, violated 47 U.S.C. §§ 227(b)(1)(A)(iii), (b)(1)(B). As a result of Defendant's conduct, Plaintiff Hayhurst and the other members of the Prerecorded No Consent Class are each entitled to a minimum of $500 in damages, and up to $1,500 in damages, for each violation.

### SECOND CLAIM FOR RELIEF
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff and the Autodialed No Consent Class)**

64.     Plaintiff Hayhurst repeats and realleges paragraphs 1 through 59 of this Complaint and incorporate them by reference.

65.     Defendant and/or its agents made unwanted solicitation telephone calls to cellular telephone numbers belonging to Plaintiff Hayhurst and the other members of the Autodialed No Consent Class using equipment that, upon information and belief, had the

18

capacity to store or produce telephone numbers to be called, using a random or sequential number generator.

66.     These solicitation telephone calls were made *en masse* without the prior express written consent of Plaintiff Hayhurst and the other members of the Autodialed No Consent Class.

67.     Defendant has, therefore, violated 47 U.S.C. § 227(b)(1)(A)(iii). As a result of Defendant's conduct, Plaintiff Hayhurst and the other members of the Autodialed No Consent Class are each entitled to a minimum of $500 in damages, and up to $1,500 in damages, for each violation.

**THIRD CLAIM FOR RELIEF**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff and the Do Not Call Registry Class)**

68.     Plaintiff Hayhurst repeats and reallege paragraphs 1 through 59 of this Complaint and incorporate them by reference.

69.     The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

70.     47 C.F.R. § 64.1200(e), provides that § 64.1200(c) is "applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers."[36]

---

[36] *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003) Available at https://apps.fcc.gov/edocs_public/attachmatch/FCC-03-153A1.pdf

71.    Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff Hayhurst and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

72.

73.    Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff Hayhurst and the Do Not Call Registry Class received more than one telephone call in a 12-month period made by or on behalf of Defendant in violation of 47 C.F.R. § 64.1200, as described above. As a result of Defendant's conduct as alleged herein, Plaintiff Hayhurst and the Do Not Call Registry Class are each entitled to a minimum of $500 in damages, and up to $1,500 in damages, for each violation.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Hayhurst individually and on behalf of the Classes, prays for the following relief:

74.    An order certifying this case as a class action on behalf of the Classes as defined above; appointing Plaintiff Hayhurst as the representatives of the Classes; and appointing his attorneys as Class Counsel;

75.    An award of actual and/or statutory damages and costs;

76.    An order declaring that Defendant's actions, as set out above, violate the TCPA;

77.    An injunction requiring Defendant to cease all unsolicited calling activity, and to otherwise protect the interests of the Classes; and

78.    Such further and other relief as the Court deems just and proper.

### JURY DEMAND

Plaintiff Hayhurst requests a jury trial.

DATED this 2nd day of July, 2019.

By: _/s/ Ted Johnson_____
    One of Plaintiff's Attorneys

    Ted Lewis Johnson
    PO Box 5272
    Greensboro, NC 27435
    tedlewisjohnson@tedlewisjohnson.com
    Phone: (336) 252-8596


    LAW OFFICES OF STEFAN COLEMAN, P.A.
    Stefan Coleman, *pro hac vice forthcoming*
    law@stefancoleman.com
    201 S. Biscayne Blvd, 28th Floor
    Miami, Fl 33131
    Telephone: 877.333.9427/Fax: 888.498.8946

    KAUFMAN P.A.
    Avi R. Kaufman, *pro hac vice forthcoming*
    kaufman@kaurmanpa.com
    400 NW 26th Street
    Miami, FL 33127
    Telephone: 305.469.5881

    *Attorneys for Plaintiff* Hayhurst *and the putative*
    *Classes*